**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JENNIFER PARKER STANLEY and PARKER, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>MEDIATION AND CIVIL ARBITRATION, INC. d/b/a RAPIDRULING; ZACHARY MEYER; and ANDREW SACHS,<br><br>Defendants. | Civil Action No. 1:26-cv-05088-PAE |

## SECOND AMENDED CLASS ACTION COMPLAINT

**JURY TRIAL DEMANDED**

Plaintiffs Jennifer Parker Stanley ("Stanley") and Parker, Inc. ("Parker"), individually and on behalf of the proposed classes, by their attorneys, Heskin & Proper, PLLC, allege against Mediation and Civil Arbitration, Inc. d/b/a RapidRuling ("RapidRuling"), Zachary Meyer ("Meyer"), and Andrew Sachs ("Sachs"), upon personal knowledge as to their own acts and experiences and upon information and belief as to matters within Defendants' knowledge, as follows:

## NATURE OF THE ACTION

1. This action concerns the commercial promotion and concealment of material facts about an arbitration service. RapidRuling represented itself as a neutral, independent forum while, Plaintiffs allege, concealing its development with a merchant-cash-advance ("MCA") funder, its financial dependence on repeat MCA claimants, and the funder's role in preparing its rules and training materials.

2. Parker and Stanley were subjected to RapidRuling arbitration No. 46519/2026. They objected to the forum, were required to proceed to a hearing, and settled the underlying dispute after the arbitrator advised counsel that an adverse ruling would follow if the dispute did not settle. Plaintiffs allege that the undisclosed commercial structure caused additional financial loss, including an incremental settlement payment beyond what they would have paid in a properly disclosed, independent forum.

3. The hearing and settlement are alleged as part of the causal history and damages. The actionable conduct asserted against these Defendants is their own commercial representations and concealment. Plaintiffs do not sue the hearing arbitrator, Lauren Ruth, seek appellate review of her rulings, or seek to recover solely because an arbitrator predicted an adverse result.

4. AKF Inc. d/b/a FundKite ("FundKite") and Alex Shvarts are not Defendants. Plaintiffs do not reassert a claim against either settling party or request rescission of the FundKite settlement in this pleading. The underlying transaction is described to identify the dispute, the forum selection and the alleged consequences of Defendants' independent conduct.

## PARTIES

5. Stanley is a citizen and resident of Kentucky. She owns and is an authorized representative of Parker and was named individually as a respondent and purported guarantor in the RapidRuling proceeding.

6. Parker is a Kentucky corporation with its principal place of business in Cynthiana, Kentucky. It is the merchant identified in the arbitration papers and does business as Parker Inc. and/or Parker Enterprises, Inc.

7. RapidRuling is Mediation and Civil Arbitration, Inc., a corporation operating under the RapidRuling name. It was established and originally operated from New York. According to

the New York Attorney General's verified petition, it later made Texas corporate filings and its rules designate Dallas as the arbitral situs. Plaintiffs do not equate those designations with proof that all actual commercial operations occurred in Texas.

8. Meyer is a New York citizen and attorney who co-founded and controlled RapidRuling. On information and belief, he personally participated in the undisclosed rule-development relationship, the preparation of standard merchant disclosures, and the commercial promotion of the service, as more particularly alleged below.

9. Sachs is a New York citizen and attorney who co-founded and controlled RapidRuling. On information and belief, he personally participated in the undisclosed rule-development relationship, the website arrangements and the maintenance of the rules used to market and supply the service, as more particularly alleged below.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The proposed classes contain at least 100 members; at least one class member is a citizen of a state different from at least one Defendant; and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. The jurisdictional amount includes the forum-related fees and incremental financial losses alleged across thousands of MCA proceedings, not the face amount of every disputed MCA balance.

11. The numerosity and amount allegations are made upon information and belief based on the thousands of arbitrations described in the Attorney General's petition, RapidRuling's recurring fee model, and the financial consequences of the challenged practices. Plaintiffs' exact damages and the aggregate class calculation will be established through transaction and payment records.

12. Meyer and Sachs are subject to personal jurisdiction in New York based on their domicile and their participation in the New York commercial conduct giving rise to this action. RapidRuling is subject to specific jurisdiction based on its purposeful New York activity in creating and promoting the challenged service and the alleged connection of that activity to the service supplied to Plaintiffs.

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the challenged commercial acts and omissions occurred in this District. Plaintiffs do not base venue solely on the location designated for an arbitration hearing.

## FACTUAL ALLEGATIONS

### A. The commercial representations and undisclosed relationships

14. On June 8, 2026, the New York Attorney General commenced a proceeding against RapidRuling, Meyer and Sachs concerning the same commercial practices. The verified petition was filed in this action as ECF No. 17-1, Exhibit A to the operative amended complaint. Plaintiffs specifically adopt, on information and belief, the commercial facts alleged in paragraphs 39–74, 86–108 and 114–119 of that petition, as summarized and particularized below. Those are allegations supported by the investigation described in the petition, not adjudicated findings.

15. The petition identifies RapidRuling's public website representations as of May 19, 2026, including its "Benefits of RapidRuling" and "Why Choose RapidRuling for Online Arbitration and Mediation Services" pages. The latter page represented that its experienced arbitrators and mediators provide a "neutral third party" to resolve disputes. Petition ¶¶ 39–44.

16. The same commercial materials represented that arbitrators hear both parties, review their evidence and consider both sides' arguments. RapidRuling's published Rule 9 stated

that arbitrators shall be fair and impartial. These representations concerned the nature of the service offered to the market, in addition to the conduct of individual hearings. Petition ¶¶ 42–46.

17. RapidRuling directed merchants to its website through its sample arbitration clause and case-initiating communications. The publicly accessible materials did not disclose the claimant-side funder's role in creating the platform, drafting its rules or furnishing training materials. Petition ¶¶ 47–50, 69–72. Plaintiffs allege that the material relationships were concealed when Parker agreed to the forum designation. They do not premise their claim on having reviewed the website before signing the MCA, or on voluntarily choosing the forum after the arbitration began.

18. The MCA funder identified in the investigation was LCF Group, Inc. ("LCF"). Plaintiffs do not allege that LCF and FundKite are the same entity. The relevance of the LCF relationship is its alleged influence over the commercially offered forum used by multiple MCA claimants, including the proceeding against Plaintiffs.

19. According to the petition, after New York restricted the use of confessions of judgment against out-of-state defendants in 2019, LCF's attorney Adam Feldman discussed with Meyer and Sachs LCF's investment in or co-founding of RapidRuling. Meyer and Sachs considered the model suitable for the MCA industry but rejected direct LCF ownership because of the appearance of impropriety. Petition ¶¶ 52–58.

20. Meyer nevertheless received Feldman's initial proposed rules on August 6, 2019. Over the following four months, Feldman, Meyer and Sachs exchanged at least six drafts and discussed them by telephone. LCF was a financially interested prospective claimant in the proceedings those rules would govern. Petition ¶¶ 59, 86–88.

21. The drafts addressed claimant and respondent defaults, service, discovery and enforcement. Plaintiffs allege that Meyer and Sachs knowingly accepted claimant-favorable proposals without disclosing the funder's participation to the merchants who would be subjected to the resulting service. Petition ¶¶ 89–99. Plaintiffs do not allege that every historical deadline was unchanged when Parker's proceeding began; the petition identifies subsequent changes. Id. ¶ 100.

22. The petition describes Feldman's input into RapidRuling's initial website, assistance with Meyer's RapidRuling email account, and establishment of its payment account. When the website was redesigned in 2021, LCF referred Sachs to the individual who managed LCF's website, whom RapidRuling hired for that work. Petition ¶¶ 60–64. These are identified acts of business development and promotion predating Parker's arbitration.

23. From March 2020 through March 2023, LCF filed more than 2,500 RapidRuling arbitrations, representing more than 90% of the platform's filings during that period. The petition alleges that each involved an out-of-state merchant. RapidRuling did not disclose that commercial dependence in the materials described above. Petition ¶¶ 65–72.

24. The petition further describes MCA sample awards provided for arbitrator training and Meyer's expressed desire for similar analysis to be applied to MCA matters. Plaintiffs allege that the commercial representations omitted the existence and source of those materials. Petition ¶¶ 105–108. Plaintiffs do not ask this Court to presume liability from a win rate or to treat every funder victory as proof of an improper decision.

25. Meyer also drafted the standard conflict-disclosure template used by later arbitrators. According to the petition, that template did not reveal the funder and MCA-industry

ties alleged above. Petition ¶¶ 114–119. The omission was consistent with the incomplete commercial disclosures about the service offered to merchants.

26. Sachs's role was not limited to a corporate title. His participation included the successive rules drafts, the website redesign relationship described above, and maintenance of RapidRuling's commercial rules. In his September 28, 2026 declaration filed as ECF No. 25, Sachs identifies himself as a founder and principal responsible for maintaining those rules on RapidRuling's public website.

27. Meyer's role was not limited to a corporate title. His participation included receiving the initial rules proposal, accepting the undisclosed funder input, preparing the standard disclosure template and participating in the platform's commercial development. The allegation against each founder concerns his own identified participation and knowing omissions, rather than automatic liability for the corporation's acts.

28. The facts support an inference of knowing concealment: Meyer and Sachs recognized the appearance-of-impropriety problem associated with funder ownership, accepted substantial funder assistance without formal ownership, and promoted neutrality without disclosing that assistance and dependence.

29. The omitted information was material to evaluating the independence of the service. Reading the published procedures would not reveal who helped create the business and rules, the concentration of repeat-claimant business, or the source of the training materials. Those internal arrangements were peculiarly within Defendants' knowledge.

**B. Parker's transaction and the commencement of arbitration**

30. On May 12, 2025, Parker entered a Revenue Purchase Agreement with FundKite. The agreement stated a $300,000 purchase price, $15,185 in deducted fees, $284,815 in

disbursements, a $444,000 purchased amount, a 4% remittance percentage and weekly remittances of $11,100. These terms identify the underlying transaction; this complaint does not seek a determination of FundKite's liability or revive the claims settled with it.

31. The agreement designated RapidRuling for arbitration and contained a fourteen-day opt-out procedure requiring registered mail. Stanley was an individual signatory and was later named individually in the collection proceeding.

32. Parker lost its largest customer and suffered a severe reduction in revenue. Its remaining receivables were insufficient to support the contractual remittances. On January 14, 2026, Stanley requested reconciliation and supplied bank records; further records covering December 2025 through April 2026 were supplied. Parker's defense was that the agreement was a purchase of future receivables, under which the purchaser assumed the risk that those receivables would not materialize. Plaintiffs contend that the loss of the customer and resulting insufficiency of receivables supplied a complete defense to collection based on that business decline, rather than an unconditional obligation to pay the purchased amount from other funds.

33. FundKite commenced RapidRuling arbitration No. 46519/2026. The file contains a demand dated February 20, 2026 identifying Parker as the merchant, invoking CPLR § 7503(c), selecting RapidRuling and demanding $111,000. Stanley was also named as an individual respondent in the proceeding.

34. When Stanley signed the May 12, 2025 MCA on Parker's behalf and as an individual signatory, she believed that the designated arbitral forum was legitimate and unbiased. She did not know of the concealed funder-development relationships and claimant-oriented commercial structure alleged above and had no reason to believe that RapidRuling was an

untoward or biased forum. Parker's acceptance of the arbitration designation occurred in that state of ignorance of the material concealed facts.

35. Had the concealed facts been disclosed when the MCA was signed, Stanley would have required removal of the RapidRuling clause. If the transaction could not proceed without that clause, she would not have agreed to the MCA. The alleged fraud therefore affected the decision to enter the agreement containing the forum designation on May 12, 2025, rather than a later decision voluntarily to participate in an arbitration.

36. The agreement contained a fourteen-day opt-out, but the concealed relationships were not disclosed to Plaintiffs at signing or during that period. By the time the arbitration was demanded, that contractual period had expired. Plaintiffs were subjected to the designated forum under the signed agreement and ultimately faced participation and settlement or the risk of an adverse award and resulting judgment. Their participation under that constraint did not constitute an informed acceptance of the forum's concealed structure.

37. Defendants promoted an independent, neutral arbitration service while concealing the material commercial relationships alleged above. They knew merchants would be bound to their service through arbitration clauses in MCA agreements. Plaintiffs allege a duty to disclose the concealed relationships necessary to make that commercial portrayal accurate, including through the standardized forum-selection arrangements, and also rely on Defendants' superior knowledge of internal arrangements that merchants could not discover from the published procedures. The omission deprived Stanley and Parker of that information when accepting RapidRuling's designation in the MCA.

**C. Objections the hearing and the settlement**

38. By June 8, 2026, the Attorney General's proceeding had brought the concealed relationships to Plaintiffs' attention. Through counsel, Plaintiffs objected to RapidRuling as the forum for the reasons alleged in the Attorney General's petition. Plaintiffs do not allege that they continued to believe the neutrality representations after learning the alleged concealed facts.

39. On June 8, FundKite's counsel requested suspension of RapidRuling proceedings in light of the Attorney General's allegations. Arbitrator Lauren Ruth denied a stay that evening. The following day, FundKite's counsel requested that the proceeding continue. The parties' correspondence identifies a hearing then scheduled for June 9.

40. On June 9, Ruth requested counsel's availability for the hearing and stated that, absent a response, she would enter an award on submissions. Plaintiffs' request for an evidentiary hearing was made while preserving their objection to the forum; it was not a withdrawal of that objection.

41. Plaintiffs commenced this federal action on June 16, 2026. They continued to object to the forum rather than treating the commencement of the action as consent to proceed before it.

42. A Zoom hearing or conference occurred on June 26, 2026. Plaintiffs attended through counsel over their maintained forum objection. In correspondence that day, counsel again objected to the forum and objected to testimony concerning Plaintiffs' lawsuit against it. The correspondence confirms that the objection remained live during the hearing.

43. In connection with that hearing, Ruth told Plaintiffs' counsel that she would rule against Parker if the parties did not settle. Plaintiffs allege the substance of the statement based on counsel's personal participation; they do not present it as a verbatim quotation or as an independently authenticated transcript.

44. The contemporaneous correspondence records ensuing settlement deadlines. On June 30, Ruth allowed the parties until July 3 to settle and stated that she would otherwise enter a final award. On July 3, she agreed to hold the award if the parties had agreed to terms. Later messages addressed the submission of settlement paperwork.

45. Faced with the prospect of an imminent adverse award from a forum whose concealed commercial structure they had challenged, Plaintiffs agreed to a settlement requiring $50,000, including a $10,000 initial payment and subsequent $1,000 weekly payments. Parker would not have settled had it been able to present its receivables-based defense in a legitimate and unbiased forum. It settled because it was required to proceed before RapidRuling over its objection and the arbitrator told counsel that she would rule against Parker absent settlement.

46. The settlement states an effective date of July 9, 2026. A signed copy is maintained in counsel's file as July 13, 2026. The dismissal stipulation and settlement were filed on July 16 as ECF Nos. 15 and 15-1. The hearing and settlement thus occurred after the original complaint, but before the July 31 amended complaint.

47. The agreement imposed admissions, releases and litigation covenants, including removal of FundKite and Shvarts and withdrawal of allegations against them. It also required discontinuance of the arbitration. Plaintiffs disclose those provisions and do not premise this complaint on an assertion that the settlement contained no release or that it has already been invalidated.

48. The agreement identifies FundKite and Shvarts as protected parties and also describes categories of related persons. RapidRuling, Meyer and Sachs are not named signatories or expressly named released defendants. Plaintiffs contend that their independent commercial conduct is actionable outside the claims and persons released; the scope and application of the

related-person language remain issues for determination under the agreement. Plaintiffs do not infer from the omission of a name alone that a defendant cannot invoke the release.

49. After the settlement, FundKite commenced a separate New York County proceeding, index No. 654759/2026, seeking enforcement. Plaintiffs' opposition in that proceeding supplies additional contemporaneous history and records concerning the arbitration, settlement and payments. This pleading seeks no relief against FundKite in that separate action.

50. The records accompanying that opposition indicate that the initial settlement wire was made after payment instructions were provided on August 28, 2026, and that Plaintiffs undertook to make the weekly payments. The actual ledger, payment dates and allocation between the named Plaintiffs must establish the loss claimed here.

**D. Causation and the losses of each Plaintiff**

51. Defendants' commercial concealment caused Parker to enter the MCA with the RapidRuling designation without knowledge of the material forum relationships. Had those facts been disclosed, the clause would have been removed or the transaction would not have been made. The undisclosed designation then subjected Plaintiffs to the challenged forum, where compelled participation and the threat of an adverse ruling caused a settlement Parker otherwise would not have made. Plaintiffs' signing-stage reliance and subsequent financial injury form the alleged causal sequence; neither participation nor settlement after discovery is alleged as a new act of reliance.

52. Parker alleges that the settlement obligation was an additional financial burden caused by being subjected to the concealed forum structure and resulting settlement pressure, because it would otherwise have defended the collection demand rather than settled. Recovery is sought for the resulting proven financial loss, including amounts actually paid, subject to proof of

the defense and causal connection. Plaintiffs do not seek an automatic recovery of every dollar spent defending the underlying collection dispute or duplicate recovery of the same settlement obligation and payments.

53. Parker's claimed loss includes payments made under the $50,000 settlement, which it alleges it would not have entered absent the concealed forum designation and resulting arbitration pressure. Any recovery for the unpaid portion of the settlement obligation must rest on a legally recoverable, sufficiently certain loss and may not duplicate amounts paid.

54. Additional expenses claimed are limited to identifiable sums incurred because of the concealed forum relationships and resulting proceedings. Plaintiffs distinguish expenses caused by that concealment from costs that would have arisen in defending the underlying collection demand in any forum. Fees incurred prosecuting this action are sought only to the extent a statute authorizes fee shifting.

55. Parker's loss of its largest customer, the insufficiency of its receivables, its reconciliation request and supporting bank records provide the factual basis for its asserted defense to collection. Plaintiffs contend that, in a true sale, the purchaser assumes the risk that future receivables will be insufficient, and that Parker therefore had a complete defense to collection based on that business loss. The arbitrator's statement and ensuing settlement support the allegation that forum pressure caused Parker to pay despite that defense. Plaintiffs seek to prove the defense and resulting financial loss in establishing causation and damages against these Defendants; they assert no new claim against FundKite and do not seek rescission of its settlement.

**E. New York transactions and standardized market conduct**

56. The challenged representations were disseminated through publicly offered, standardized arbitration materials to merchants and business owners nationwide. The service was

not individually designed or negotiated for Parker. The alleged deception concerns the service offered to the market and thus extends beyond a unique bilateral payment dispute.

57. The MCA transactions are commercial, but the challenged service was offered through public materials to an open class of businesses and individual guarantors. Plaintiffs' consumer-oriented allegation rests on that standardized market exposure, not on an assertion that Parker purchased household goods.

58. For the private New York General Business Law claim, there are transaction-specific New York facts. Kentucky residence, New York founders, a New York lawyer and a New York choice-of-law clause alone are not alleged to supply those missing transaction facts.

59. The rules designated Dallas, Texas as the arbitral situs. Plaintiffs distinguish that contractual designation from actual service transactions, but do not allege that virtual attendance through New York counsel automatically establishes deception in New York. The New York claim and subclass below depend on the actual New York transaction facts identified in the preceding paragraph.

**F. Conduct distinct from protected adjudication**

60. The conduct challenged as independently actionable consists of the commercial portrayal of the service and concealment of material business relationships before an informed forum decision. Plaintiffs do not claim that an adverse procedural or evidentiary ruling, a settlement discussion or the adoption of a fraud label alone defeats arbitral immunity.

61. Defendants invoke Rule 39.4, which excludes liability for acts, errors or omissions in connection with arbitration under their rules. Plaintiffs contend that the commercial deception inducing use of the service precedes and is distinct from the protected adjudicative functions. They also contend that a general exclusion of liability does not authorize intentional commercial fraud.

This complaint identifies the underlying acts so that the scope and enforceability of the exclusion can be determined on the actual claim rather than its label.

## CLASS ALLEGATIONS

62. Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(3) of a damages class consisting of persons and entities in the United States who entered MCA agreements designating RapidRuling without disclosure of the funder-development relationships described here, were named as merchant or guarantor respondents in RapidRuling MCA arbitrations during the applicable limitations period, and incurred arbitration-related fees or settlement obligations or payments because of the challenged concealment and forum designation.

63. For the General Business Law claim, Plaintiffs propose a subclass limited to members whose relevant deceptive service transaction occurred in New York. That subclass is asserted only if the named Plaintiffs' verified facts establish standing to represent it. Plaintiffs do not seek nationwide application of § 349 based solely on Defendants' New York origins.

64. Excluded are Defendants and their personnel and controlled entities, the presiding judicial officer and immediate family, persons whose claims against these Defendants have been finally adjudicated, and persons whose applicable enforceable releases extinguish the claims asserted here. Plaintiffs do not presume that every settlement releases an independent provider or that every provider claim survives a settlement.

65. The class is sufficiently numerous that joinder is impracticable. The investigative record describes thousands of arbitrations, and the identities and communications of respondents can be determined from Defendants' records, supplemented by payment records.

66. Common questions include what commercial relationships existed, which founder participated in each relationship and disclosure practice, what the standardized materials disclosed,

whether the omissions were material, and whether Defendants' exclusion-of-liability provision covers the independently alleged commercial conduct.

67. Plaintiffs allege typicality because the material forum relationships were concealed when they accepted the RapidRuling designation in their MCA, they were later subjected to an MCA arbitration before that forum, and they incurred the types of financial loss asserted here. Actual signing-stage reliance, causation, releases, governing law and damages may require individualized proof; Plaintiffs seek appropriate subclasses or issue treatment where warranted.

68. Plaintiffs will fairly and adequately protect the class and have retained counsel experienced in MCA and complex commercial litigation. The release and individual proof issues affecting these named Plaintiffs must be resolved before their adequacy is finally determined.

69. A class action is superior where the cost of proving the common commercial relationships and disclosure practices would make separate proceedings impractical. Plaintiffs allege predominance based on the standardized practices, subject to proof of the common causal and reliance questions and a workable treatment of individual issues.

70. Plaintiffs do not seek certification of a prospective-injunction class based only on their completed arbitration. This complaint requests damages and relief incidental to adjudicating the surviving damages claims, not a nationwide prohibition on future awards without standing to obtain that relief.

**<u>FIRST CAUSE OF ACTION</u>**

**Common Law Fraud and Fraudulent Concealment Against All Defendants**

71. Plaintiffs repeat and reallege the preceding factual and class allegations to the extent applicable to this claim.

72. RapidRuling commercially portrayed its service as independent and neutral while concealing the material funder-development relationships described above. Plaintiffs' fraud claim

concerns the concealment of those relationships when Stanley and Parker accepted the RapidRuling designation in the May 12, 2025 MCA. The later public materials identified above support the allegation of the standardized commercial portrayal and continuing concealment; Plaintiffs do not allege that they read those later materials before signing.

73. Meyer and Sachs are individually liable for their respective identified acts of commercial participation and knowing concealment, not merely because they were founders or once served as arbitrators. Their involvement and recognition of the impropriety issue support the inference that they knew the commercial portrayal was materially incomplete.

74. Defendants intended merchants and guarantors to agree to arbitration clauses designating their service without learning the concealed relationships. Their duty to disclose arose from their incomplete commercial portrayal of neutrality and their exclusive or superior knowledge of the undisclosed arrangements in circumstances where MCA signatories could not discover those facts before accepting the designation.

75. In signing the MCA on May 12, 2025, Stanley, acting for Parker and as an individual signatory, justifiably proceeded without knowledge of the concealed forum relationships and in the belief that the designated forum was legitimate and unbiased. Had she known the concealed facts, she would have required removal of the RapidRuling clause or declined the MCA. The material internal relationships were not apparent from the arbitration clause or published procedures. Plaintiffs' claimed reliance occurred at signing; their later compelled participation and settlement are alleged as consequences of that uninformed designation.

76. The concealment and resulting uninformed forum decision were a substantial and proximate cause of each Plaintiff's specifically identified incremental loss. Plaintiffs seek

compensatory damages measured by demonstrated out-of-pocket injury, not a speculative favorable adjudication or the gross amount of an underlying debt without proof of causal loss.

**SECOND CAUSE OF ACTION**

**New York General Business Law Section 349 Against All Defendants**

77. Plaintiffs repeat and reallege the preceding allegations to the extent applicable to the New York service transaction and subclass.

78. Defendants engaged in consumer-oriented deceptive conduct by using standardized public and merchant-facing materials to portray their commercially offered service as independent and neutral without disclosing the material funder-development relationships.

79. Those representations and omissions were likely to mislead a reasonable recipient of the service about its independence. The claim concerns actual deceptive practices under § 349(h), not an assumed private right to sue for every practice the Attorney General may regulate.

80. The deception occurred in the New York transaction specifically identified above and directly caused each Plaintiff's identified financial injury. For this claim, Plaintiffs allege causation and actual injury independently of any requirement of common-law reliance.

81. Plaintiffs seek actual damages and any limited enhancement, costs and reasonable attorneys' fees authorized by § 349(h), subject to its statutory requirements and limits and without duplicating recovery on the first claim.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendants, as permitted by law, as follows:

i. Certifying the appropriate damages class and subclass under Rule 23(b)(3), appointing proper class representatives and appointing Plaintiffs' counsel as class counsel;

ii. Awarding each Plaintiff and class member proven compensatory damages caused by Defendants' actionable commercial conduct, without duplicative recovery;

iii. Awarding the relief, limited damages enhancement, costs and reasonable attorneys' fees authorized by General Business Law § 349(h) for qualifying New York claims;

iv. Awarding prejudgment and postjudgment interest as permitted by law;

v. Granting such further relief as is consistent with Plaintiffs' standing, the surviving claims and the applicable settlement and release limitations.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
October 2, 2026

HESKIN & PROPER, PLLC

By: /s/ Shane R. Heskin
Shane R. Heskin
641 Lexington Avenue, 14th Floor
New York, New York 10022
(917) 362-1313
shane@heskinproper.com
Attorneys for Plaintiffs